UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| ALEXANDER HERDER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0: 18-006-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BOYD COUNTY SHERIFF'S DEPARTMENT, et. al., | ) | **MEMORANDUM ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Plaintiff Alexander Herder has filed a motion to exclude or limit the testimony of the defendant's expert witness, Robert Miller [Record No. 70] He asserts that Miller is not qualified to testify as an expert on the issues for which he was retained. The defendant's response included an affidavit from Miller addressing only some of Herder's objections. [Record No. 73-1, p. 2] To ensure the expert testimony of Miller complies with Rule 702 and controlling case law, the Court will direct supplemental briefing on the matters set forth below.

**I.**

The undersigned has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). To accomplish this, an expert "must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (quoting Fed. R. Evid. 702)).

**A.**

Page 3 of Miller's expert report depicts a photo of bullet holes entering the rear of Herder's Ford Fusion and states: "It is clearly evident that the trajectory of the fired rounds becomes increasing [sic] angular as Ball moved toward the right to escape the backing vehicle." [Record No. 63-1, p. 4] Herder argues that nothing in Miller's report identifies how he reached this conclusion and nothing in Miller's CV qualifies him to render an expert opinion on ballistics.

Miller responds *via* affidavit, stating that he reached this conclusion based upon the Ashland Police Department Report, which included the Kentucky State Police ("KSP") Trajectory Analysis. [Record No. 73-1, p. 3] He asserts that Herder is confusing ballistics with trajectory and that he offers no opinion as to ballistics. However, it appears that Miller does render an opinion based upon bullet trajectory when he suggests that the movement of Ball and the vehicle is corroborated by the increasingly angular trajectory of the bullet holes. Miller must provide the the basis for his "knowledge, skill, experience, training, or education," qualifying him to analyze or interpret KSP's trajectory data to render such an opinion.

**B.**

Next, Herder objects to Miller testifying regarding whether Ball followed his police training during the events with Herder. He notes that Miller's report fails to disclose the basis of his familiarity with the Boyd County Sheriff's Department's training, or any individualized training received by Ball and Atkins. Miller responds by highlighting the credentials from his CV and stating that he has "enumerable hours of training at various seminars, classes, etc., which may be generically titled something else, but it would contain many, many hours of

training regarding proper and improper use of force by a police officer." [Record No. 73-1, p. 2]

While courts have permitted experts to testify about discrete police-practice issues, sweeping statements that report generalized non-specific education and training do not satisfy the burden of demonstrating expertise on a discrete topic. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908–09 (6th Cir. 2004). "Formal education is not always necessary to qualify an expert; practical skill and experience may suffice." *U.S. v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994). However, that skill and experience must still be specific to the topic on which the expert intends to opine. The Sixth Circuit has held that "police policies and practices" is too broad a field for one to qualify as an expert. *Champion*, 380 F.3d at 907 (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1348–54 (6th Cir. 1994)).

For Miller to provide expert testimony that Ball adhered to his training and properly complied with departmental (or otherwise generally accepted) use-of-force practices, he must first demonstrate that he is an expert in the discrete area of police use of force.

### C.

The defendants also seek Miller's expert testimony regarding the use of police lights during the events in question. Miller's expert report states: "[g]iven the shallow angle of the camera view as the Ram passed the camera lens, it is not possible to see the lights during daylight conditions. Given these circumstances, it is not possible to conclude with the video, whether the lights were off or on." [Record No. 63-1, p. 5]

In Miller's affidavit, he states that "[t]he visibility of blue lights is an accident reconstruction opinion. There are several time and distance and speed equations that may require testimony as a reconstructionist." [Record No. 73-1, p. 2]

Miller's CV makes clear that his recognition as an expert in accident reconstruction is well founded. However, he must still satisfy to the Court that "(b) the testimony is based on sufficient facts and data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Miller must explain how he reached his opinion that "it is not possible to conclude with the video, whether the lights were off or on." [Record No. 63-1, p. 5]

## II.

In addition to providing the above supplementation, the Court requests clarification on two items from Miller's response affidavit. First, Miller's CV and affidavit note that he has offered expert testimony in the U.S. District Courts for both the Eastern and Western Districts of Kentucky. Miller should identify cases in which he testified as an expert witness on police use-of-force or a related topic.

Second, and although not appearing on his CV, Miller's affidavit states that he is the Chief Deputy and a current firearms instructor for the Carroll County Sheriff's Department. Defendants' supplemental briefing should include any relevant training or experience Miller has that the Court should consider prior to ruling on the plaintiff's motion.

Accordingly, it is hereby

**ORDERED** that the defendants are directed to **SUPPLEMENT** their response to the plaintiff's motion to exclude by responding to the above-stated issues on or before **October**

**17, 2023**.  Briefing is limited to the issues contained in this Order.  After this filing, the matter will be submitted for the Court's consideration.

Dated:  October 3, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky